# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## <u>LETTER OPINION</u>

November 10, 2010

Christopher D. Olszyk
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
    (*Attorney for Plaintiff*)

Francisco S. Guzman
665 Newark Avenue
Jersey City, NJ 07306
    (*Attorney for Defendants*)

    **RE:**   **Holt's Company v. Hoboken Cigars, LLC, et al.**
                    **<u>Civ. No. 09-3782 (WJM)</u>**

Dear Counsel:

    This matter comes before the Court on Plaintiff's motion for default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  There was no oral argument. Fed. R. Civ. P. 78.  For the reasons that follow, plaintiff's motion is **GRANTED**.

## I.    BACKGROUND

    The following facts are established by the complaint, the motion for default

judgment, and the exhibits attached thereto.

## II.    DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 55 governs default.  After the Clerk's entry of default pursuant to Rule 55(a), a plaintiff may then seek the Court's entry of a default judgment pursuant to Rule 55(b)(2).  *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  Before entering a default judgment, a Court must find: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (quoting *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987)).  Additionally, the Court must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Id.* (citing *Directv, Inc. v. Asher*, No. 03-1969, 2006 U.S. Dist. LEXIS 14027, at *1 (D.N.J. Mar. 14, 2006)).  To make these determinations, the Court should accept as true the well-pleaded factual allegations of the complaint, although the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990)  If it is determined that the plaintiff is entitled to a default judgment, the Court must then determine the appropriate amount of damages to award.  *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-2662, 2009 U.S. Dist. LEXIS 60637, at *18 (D.N.J. July 15, 2009).

### B.    Default Judgment is Appropriate

First, this Court already addressed the three factors identified in *Doug Brady* in the May 19, 2010 order denying Defendants' motion to vacate default.  (Docket No. 31.)  When Defendants moved to vacate the entry of default, they did not include an answer or any reference to a defense, let alone a meritorious one.  Since Defendants provided no basis for a meritorious defense, Plaintiff is entitled to default judgment.  Additionally, Plaintiff has alleged facts that constitute a cause of action.  Plaintiff claims that Defendants sold counterfeit version of its trademarked cigars without Plaintiff's consent.  (Compl. ¶ 24.)  Taking the factual allegations as true, all counts but Count IV of Plaintiff's complaint constitute legitimate causes of action justifying damages.

Counts I, II, and III are Lanham Act claims, for infringement of registered trademarks (15 U.S.C. § 1114(1)(A)), trademark counterfeiting (15 U.S.C. § 1116(D)), and false designation of origin and false description (15 U.S.C. §1125(A)), respectively.  Trademark infringement (Count I) and false designation of origin (Count III) are analyzed

under identical standards. *See Chanel, Inc. v. Gordashevsky,* 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). To establish these claims, the record must demonstrate that plaintiff (1) has a valid and legally protectable mark; (2) owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *Id.* Plaintiff's complaint establishes these claims by alleging that Defendants copied seven valid marks, owned by the Plaintiff, in a way that is likely to cause confusion to consumers. For a trademark counterfeiting claim, the only additional element is for statutory damages, available where the defendant intentionally uses the mark while knowing it is counterfeit. *Id.* at 536-37. Since Defendants were authorized sellers of ASHTON-brand cigars yet chose to sell the counterfeits in question, Plaintiff has established that they intentionally used the counterfeit mark, and statutory damages for the trademark counterfeiting claim are appropriate.

Counts IV, V and VI are New Jersey state law claims for violation of the New Jersey Consumer Fraud Act ("NJCFA"), unfair competition under N.J. Stat. Ann. § 56:4, and unfair competition under New Jersey common law, respectively. Since a cause of action under the Lanham Act has already been shown, the Court finds that Plaintiff has also stated a viable unfair competition claim under both N.J. Stat. Ann. § 56:4 and New Jersey common law. However, as a competitor, Plaintiff does not have standing to bring a cause of action under the NJCFA, and therefore Count IV does not state a viable cause of action. *Trans USA Prods. v. Howard Berger Co.*, No. 07-5924, 2008 U.S. Dist. LEXIS 61069, at *20 (D.N.J. Aug. 4, 2008) ("the NJCFA is not intended to protect competitors...that do not suffer a consumer-like injury"); *see also IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*, No. 07-1076, 2009 U.S. Dist. LEXIS 120355, at *19 (D.N.J. Dec. 28, 2009) ("no court explicitly holds that a competitor has standing to sue under the NJCFA"); *Barr Labs., Inc. v. Bolar Pharm. Co.,* No. 91-4374, 1992 U.S. Dist. LEXIS 22883, at *33 (D.N.J. July 13, 1992) ("competitors may not sue without a showing of consumer injury").

C.   Amount of Damages

 Under 15 U.S.C. § 1117(c), a plaintiff challenging the use of a counterfeit mark may elect to recover statutory damages between $1,000 and $200,000 per mark, and up to $2,000,000 per mark where the infringement is willful. As stated above, Plaintiff is entitled to statutory damages, but it is for the Court to determine the amount of damages to award. While all well-pled allegations that pertain to liability are taken as true when the defendant has defaulted, this does not extend to the amount of damages claimed. *See* Fed. R. Civ. P. 8(b)(6); *Comdyne*, 908 F.2d at 1149. Courts are given considerable discretion in determining the amount of statutory damages to award, and have looked to the following factors borrowed from copyright law for guidance: "(1) the expenses saved

and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether the defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07-2620, 2009 U.S. Dist. LEXIS 100851, at *7 (D.N.J. Oct. 28, 2009) (quoting *Platypus Wear*, 2009 U.S. Dist. LEXIS 60637, at *20-*21).  Additionally, courts can look to what awards have been given in recent cases in the district.  *Coach, Inc. v. Ocean Point Gifts*, No. 09-2415, 2010 U.S. Dist. LEXIS 59003, at *14 (D.N.J. June 14, 2010).  Plaintiff requests statutory damages in the amount of $10,000 per mark, for a total of $70,000.

Under the first two factors, Defendants' estimated profit is quite low.  Plaintiff found only seven partially empty boxes of the alleged counterfeit products at Defendants' store, and states that the filled boxes would have retailed for approximately $1,500.  (Pl.'s Mot. for Default J. 2.)  This is a relatively small amount compared to cases involving mass-produced counterfeit luxury items.  *See Chanel, Inc. v. Gordashevsky,* 558 F. Supp. 2d 532, 538 (D.N.J. 2008) (Defendant's profits from the counterfeit products were estimated to be over $2 million dollars).  Here, Defendants did not reap significant profits, nor could there have been any more than a minute affect on Plaintiff's revenue.

Under the third, fourth and seventh factors, the limited profits gained by Defendants from the counterfeit product again controls.  Since the Defendants in this case profited very little, only minor statutory damages are necessary to deter both these defendants and others.  Additionally, while Plaintiff points to its marks as indicating a "luxury" cigar brand, these marks do not warrant the level of damages required to deter, for example, counterfeiting of luxury designer marks used on handbags that retail for hundreds of dollars each.  *See Chanel*, 558 F. Supp. 2d at 538.

The fifth and sixth factors look to the culpability of the defendants.  The Third Circuit has established that a defendant's trademark infringement will be considered "willful" if it "involves an intent to infringe or a deliberate disregard of a mark holder's rights."  *Securacomm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999).  An example of such willful conduct is a "deliberate and unnecessary duplicating of a plaintiff's mark...in a way that was calculated to appropriate the goodwill the plaintiff had nurtured."  *Id.* (citations omitted).  The Court can also infer willfulness where the defendant continues the culpable conduct of selling the infringing product after receiving the complaint or otherwise being given notice of the infringement.  *See Coach*, 2010 U.S. Dist. LEXIS 59003, at *22; *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002).  Here, the confiscated products were clearly meant to pass

for official ASHTON-branded cigars, trading on Plaintiff's goodwill to garner higher prices. Since Defendants are authorized resellers of authentic ASHTON-branded cigars and have sold genuine product in the past, it seems likely that the sale of counterfeit cigars bearing copies of Plaintiff's marks was willful conduct by Defendants. (Compl. ¶ 27.); *see Chanel, Inc. v. Gordashevsky*, No. 05-5270, 2007 U.S. Dist. LEXIS 6576, at *15 (D.N.J. Jan. 29, 2007) (relying on evidence that it was "highly unlikely that Gordashevsky sold and distributed copies of Chanel's products without knowledge that Chanel's rights were being infringed" in finding Gordashevsky's conduct willful). On the other hand, Defendants did not continue the culpable conduct once the boxes were confiscated, and Plaintiff only found a total of seven boxes of counterfeit cigars. However, Defendants were far from cooperative in Plaintiff's investigation, as they denied any connection to the counterfeit boxes until after almost four months of litigation and investigation. (Pl.'s Mt. for Default J. at 6 n.7.) Therefore, the fifth and sixth factors do weigh against Defendants due to some amount of willful conduct and their lack of cooperation.

Finally, the court in *Coach, Inc. v. Ocean Point Gifts* provides a useful overview of recent awards under 15 U.S.C. § 1117(c) by grouping them into two categories: cases involving counterfeit luxury items sold on the internet and cases involving small retail stores selling counterfeit cigarettes. 2010 U.S. Dist. LEXIS 59003, at *15-*16. Since the case at hand involves a small retail store selling counterfeit cigars, it resembles the cigarette counterfeiting cases where judges have consistently awarded the minimum statutory damages per mark. *See Philip Morris USA Inc. v. Dorta Bars & Liquors Inc.*, No. 07-4599, 2009 U.S. Dist. LEXIS 127504 (D.N.J. June 1, 2009); *Philip Morris USA Inc. v. Jaritza Supermarket, Inc.*, 09-2372, 2009 U.S. Dist. LEXIS 127641 (D.N.J. Nov. 9, 2009). The large amounts awarded in the "luxury item" cases were in response to the increasing number of sales of counterfeit items via the internet, which provide the opportunity for massive profits from counterfeiting schemes, as opposed to any counterfeit sales at Defendants' small cigar shop. *See Chanel, Inc. v. Gordashevsky,* 558 F. Supp. 2d 532, 538 (D.N.J. 2008).

Plaintiff requests statutory damages in the amount of $10,000 per mark, for a total of $70,000. While Plaintiff cites *Platypus Wear* to support this request, in *Platypus* the plaintiff was unable to provide an estimate of lost revenue or of the defendant's profits, unlike here. 2009 U.S. Dist. LEXIS 60637, at *18-*23. This Court instead will follow the counterfeit cigarette cases cited in *Coach* and award $1,000 per mark for a total of $7,000. Since the scale of counterfeiting at issue is quite small, an award higher than the statutory minimum per mark is not warranted. Additionally, an award of $7,000 in statutory damages is somewhat related to the actual damages suffered. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("[t]o the extent possible statutory damages 'should be woven out of the same bolt of cloth as actual

damages'"(quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[E][1] at 14-69 (2003))); *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986) (in copyright cases, "numerous courts have held that assessed statutory damages should bear some relation to the actual damages suffered"). Based on the estimate of Defendants' potential profits provided by Plaintiff, the estimated actual damages, even if trebled for a finding of willfulness, would only amount to $4,500. *See* 15 U.S.C. §§ 1117(a),(b) (calculating actual damages based on defendants profits, and authorizing three times such profits where the trademark infringement is willful). Estimates of actual damages provided in similar trademark counterfeiting cases, even before trebling for willfulness, often range in the hundreds of thousands. *See, e.g., Chanel,* 558 F. Supp. 2d at 538 (defendant's profits estimated at over $2 million dollars); *Philip Morris USA Inc. v. C.H. Rhodes, Inc.*, No. 08-69, 2010 U.S. Dist. LEXIS 29348, at *14-*17 (E.D.N.Y. Mar. 26, 2010) (12,500 counterfeit cigarette cartons seized amounted to $375,000 of potential profit); *Louis Vuitton Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 357 (S.D.N.Y. 2009) (estimating defendants' gross sales at over $24,000); *Gucci*, 315 F. Supp. 2d at 521 (defendant's profits were estimated to be $720,000).

Therefore, after weighing all of the factors above, looking to recent awards in this district, and comparing against an approximation of actual damages, the Court finds that an award of $7,000 in statutory damages is appropriate.

D.      Attorneys' Fees and Costs

Plaintiff also requests $39,970 in attorneys' fees and $8,141,82 in costs. Under the Lanham Act, costs should be awarded in trademark infringement cases, and in "exceptional cases" the court may award reasonable attorneys' fees. 15 U.S.C. § 1117(a). It is clearly established in this Circuit that "[w]illful and deliberate trademark infringement constitutes an exceptional case for purposes of attorneys' fees." *N.V.E., Inc. v. Day*, No. 07-4283, 2009 U.S. Dist. LEXIS 72934, at *14 (D.N.J. Aug. 13, 2009). *See, e.g., Securacomm Consulting*, 166 F.3d at 190; *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002)*.* Additionally, a case can be considered "exceptional" due to a defendant's culpable conduct during litigation. *Securacomm Consulting v. Securacom*, 224 F.3d 273, 282 (3d Cir. N.J. 2000). Not only were Defendants aware of the ASHTON marks and their value, as established above, but also they stymied Plaintiff's investigative efforts by refusing to provide information regarding their supplier from August 2009 until November 2009. (Pl.'s Mt. for Default J. 6 n.7.) Therefore, while there is no allegation that Defendants continued to sell the offending products after the complaint was filed, their intentional sale of counterfeit goods combined with their conduct during Plaintiff's investigation is enough to make this an "exceptional case"

under 15 U.S.C. § 1117(a).

While an award of reasonable attorneys' fees is justified, Plaintiff requests $39,970 without providing any description of the nature of the work performed.  Instead, Plaintiff merely provides a final total of hours per attorney as well as their billing rates.  (Docket No. 34, Ex. 1.)  Without any description of the services rendered, the Court cannot determine whether or not the amount requested is reasonable.  *See* L.Civ.R. 54.2(a). Attorneys' fees will not be awarded until Plaintiff provides an affidavit detailing how these fees were calculated, including descriptive time entries or other support for its request, in accordance with Local Civil Rule 54.2.

Finally, Plaintiff is entitled to costs in this action under 15 U.S.C. 1117(a). However, while Plaintiff claims costs equaling $8,141.82, these costs are not described or itemized in any way, as required by this Court.  L.Civ.R. 54.1.  In order for costs to be awarded, Plaintiff must submit an affidavit setting forth how $8,141.82 in costs was incurred.  Therefore, the Court reserves judgment on the amount of costs and attorneys' fees to award until Plaintiff provides sufficient documentation, in accordances with Local Civil Rules 54.1 and 54.2, for the Court to determine a reasonable award.

### E.    Permanent Injunction

Plaintiff requests a permanent injunction, similar to the current Temporary Restraining Order ("TRO") in place, that would essentially prohibit Defendants from manufacturing, marketing, distributing, or offering for sale cigars bearing infringing counterfeits, copies, or imitations of Plaintiff's trademarks.  Under the Lanham Act, a permanent injunction is appropriate to prevent a trademark from being infringed.  15 U.S.C. § 1116.  "Generally, to obtain a permanent injunction, a plaintiff must show that (1) the Court's exercise of equity jurisdiction is proper, (2) the Plaintiff succeeded on the merits, and (3) the balance of equities tips in favor of injunctive relief." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008) (citations omitted).  The permanent injunction requested here is proper, considering it simply requires that Defendants continue to conform their actions to the relevant trademark law.  As already noted above, Plaintiff has succeeded on the merits.  Finally, the balance of equities weighs in favor of injunctive relief, since the conduct to be enjoined clearly violates the Lanham Act and serves no legitimate purpose.  Therefore, the permanent injunction requested by Plaintiff is appropriate, and the $10,000 bond that Plaintiff posted in support of the TRO will be exonerated.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment against

7

Defendants is granted and judgment shall be entered in the amount of $7,000 in statutory damages.  Judgment as to the amount of attorneys' fees and costs is reserved until Plaintiff submits an affidavit supporting the request for attorneys' fees and costs that properly complies with Local Civil Rules 54.1 and 54.2.  The Court shall also enjoin the Defendants from committing any further violations of Holt's Company's trademark rights.

  /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**